

U.S. Department of Justice

United States Attorney
Eastern District of New York

DCP:TH/EJD
F. #2022R00883/NY-NYE-865

271 Cadman Plaza East
Brooklyn, New York 11201

January 9, 2026

By Hand and ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Goran Gogic
               Criminal Docket No. 22-493 (JMA)

Dear Judge Azrack:

      The government respectfully moves this Court to disqualify the law office of Rubinstein & Corozzo LLP from representing the defendant Goran Gogic in the above-captioned matter because the attorneys Joseph Corozzo, Jr., Esq., Angela Lipsman, Esq., and Ian Healy, Esq. ("the Rubinstein & Corozzo Attorneys") and the defendant have several overlapping conflicts of interest.  First, the Rubinstein & Corozzo Attorneys are fact witnesses to a juror bribery and obstruction scheme as to which the defendant and his co-conspirators are implicated and there is a substantial risk that they may be called to testify at a future proceeding, including at a Fatico hearing or trial in a future case brought against the defendant.  Second, as set forth in a supplemental submission filed ex parte, Mr. Corozzo is a subject in the ongoing investigation into juror bribery and obstruction.  Even if the defendant were willing to waive the conflicts posed by his representation by Rubinstein & Corozzo LLP, in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), the government respectfully requests that the Court decline to accept such waivers.  The government does not seek to disqualify the other attorneys of record in this case, including attorneys Sanford Talkin, Esq. and Noam Greenspan, Esq., of Talkin, Muccigrosso & Roberts LLP, and attorney George J. Vila, Esq.

      Should the Court conclude that disqualification is not appropriate, the government requests that the Court schedule and conduct a hearing pursuant to United States v. Curcio.  At that hearing, the defendant should be permitted to consult with independent Curcio counsel and the Court should obtain the defendant's waiver of the conflicts of interest raised herein.  If the Court so requests, the government will submit a suggested Curcio colloquy.

BACKGROUND

The defendant Goran Gogic is charged with one count of conspiracy to violate the Maritime Drug Law Enforcement Act ("MDLEA") and three substantive counts of violating the MDLEA, in violation of Title 46, United States Code, Sections 70503(a)(1), 70503(b), 70504(b)(2), 70506(a) and 70506(b), and Title 21, United States Code, Section 960(b)(1)(B)(ii). The government expects that the evidence at trial will demonstrate that the defendant was a major international narcotics trafficker who conspired with others to smuggle vast quantities of cocaine from South America to the United States and Europe in commercial container ships.

Trial in the above-captioned case was scheduled to begin on November 17, 2025. On November 3, 2025 and November 5, 2025, the Honorable Clay H. Kaminsky, United States Magistrate Judge in the Eastern District of New York, selected a jury. The morning of November 3, 2025, staff for Judge Kaminsky provided a list of the venire (the "Juror List") to the parties. The Juror List included the first and last names and county of residence for each of the 102 potential jurors in the venire. The court provided each party with paper copies of the Juror List. Each of the Rubinstein & Corozzo Attorneys were present at jury selection.[1]

One juror ("Juror-1") was among those selected to serve as a juror at trial. As set forth in an indictment and court filings in United States v. Krasniqi et al., 25-CR-385 (JMA), after the jury was selected by Magistrate Judge Kaminsky, several conspirators participated in a scheme to approach and attempt to bribe Juror-1 with a cash payment in exchange for Juror-1 agreeing to vote not guilty at Gogic's trial. Three conspirators have been arrested in connection with this scheme. During the execution of a judicially-authorized search warrant at the residence of one conspirator, law enforcement recovered a piece of paper listing Juror-1's first and last name, home address and place of employment. During the execution of another judicially-authorized search warrant at the residence of another conspirator, law enforcement recovered cellular devices containing a text message exchange in which a photograph of Juror-1 was transmitted between conspirators.

Law enforcement continues to investigate the juror bribery scheme. Among other investigative steps, law enforcement has endeavored to interview individuals with access to the Juror List. In addition, Bureau of Prisons staff conducted a search of the defendant's unit and cell at the Metropolitan Detention Center ("MDC") in connection with the safety and security of that facility. During the search, Bureau of Prisons staff recovered materials that were designated "sensitive discovery materials" under the terms of a protective order entered by the Court in this case (the "Protective Order").[2] ECF No. 28. The Protective Order provides that sensitive discovery material is to be reviewed by the defendant only in the presence of defense counsel and the defendant is "prohibited from having possession, custody, or control" of these materials,

---

[1] Attorneys Sanford Talkin, Esq. and Noam Greenspan, Esq., of Talkin, Muccigrosso & Roberts LLP, and attorney George J. Vila, Esq., were not present during jury selection.

[2] The attorneys representing the defendant, including Mr. Corozzo, signed the Protective Order and agreed to be bound by its terms.

2

any and all copies, or other material derived from the sensitive discovery materials. Id. ¶ 10. Among the materials recovered from the defendant's cell were (1) a photograph depicting the defendant and other individuals, including the then 15-year-old daughter of a cooperating witness ("CW-1") which was clearly marked with a Bates Stamp indicating it was "SENSITIVE"; (2) a copy, clearly marked as 3500 material, of July 2022 proffer notes of another cooperating witness ("CW-2"), also designated "sensitive"; and (3) a copy, also clearly marked as 3500 material, of September 2022 proffer notes from CW-2, also designated "sensitive." Not only were the proffer notes designated "sensitive discovery materials" that should never have been in the defendant's possession at a jail facility, but they appear to have been translated into the defendant's native language and are thus "material derived from the sensitive discovery materials," which is similarly restricted.

    The possession of these prohibited materials by the defendant at the MDC is part of a coordinated effort to intimidate witnesses and obstruct justice in this case. First, CW-1 has advised that on three separate occasions, three different individuals he knew to be associated with the defendant or otherwise involved in narcotics trafficking attempted to contact him while CW-1 was incarcerated. One of these individuals approached CW-1 directly and indicated that he wanted to speak to CW-1 about his involvement in the defendant's trial. In addition, on November 10, 2025, one week before trial was scheduled to begin, an individual ("Individual-1") associated with an Eastern European drug trafficking organization approached the former home of CW-1 in Colombia, which was at that time occupied by CW-1's now-adult daughter (the same daughter depicted in the photograph possessed by the defendant in contravention of the Protective Order). Even though CW-1's extradition from Colombia to the United States in 2022 was well publicized, Individual-1 asked the person who opened the door about CW-1's whereabouts, causing CW-1 and his daughter significant fear for the daughter's safety. The incident prompted CW-1's daughter to relocate.

    Second, in January 2024, while incarcerated at the MDC, CW-2 (whose proffer notes were recently recovered from the defendant's cell translated into the defendant's native language) was handed a contraband phone by another inmate. The defendant was on a FaceTime video call on the contraband phone and asked CW-2 to visit him on his floor on the MDC and asked CW-2 questions about his case. CW-2 did not visit the defendant and was promptly moved for his own safety.

    Third, another cooperating witness ("CW-3"), a Dutch national whose family resides in the Netherlands and whose cooperation had remained confidential, was publicly identified as a cooperating witness in an Amsterdam-based daily newspaper only two days before trial was set to begin. The article identified CW-3 by name and included a stenciled depiction of CW-3 that appears to be based on a photograph of CW-3 that was disclosed to defense counsel as a government exhibit on October 14, 2024.[3] The article references Joseph Corozzo, Jr., Esq., and indicates that he is the defendant's "American lawyer" who was assisted

---

[3] A copy of the article and the government exhibit will be provided to the Court and counsel under separate cover.

by "Dutch lawyer Yehudi Moszkowicz."[4] Following publication of this news article, the disclosure of CW-3's identity was publicized on television in the Netherlands. The public disclosure of CW-3's identity caused CW-3 and CW-3's family significant fear for their safety.

The government anticipates that efforts to contact and intimidate witnesses, among others, constitute, at a minimum, a basis for an obstruction enhancement under the United States Sentencing Guidelines or would otherwise be relevant to any sentencing proceeding or future proceeding in this case.

DISCUSSION

I.  Applicable Law

   A.  Overview

A defendant has a Sixth Amendment right to conflict-free legal representation. See United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994); United States v. Schwarz, 283 F.3d 76, 90-97 (2d Cir. 2002). Although the Sixth Amendment encompasses a defendant's right to counsel of his choice, its "essential aim" is to provide "an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988); accord United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) ("The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing."). "In deciding a motion for disqualification, the district court recognizes a presumption in favor of the accused's chosen counsel, although this presumption can be overcome by a showing of an actual conflict or potentially serious conflict." United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).

Accordingly, when a district court receives notice that defense counsel may be burdened by a conflict of interest, the court must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153; see also United States v. Kliti, 156 F.3d 150, 153 (2d Cir. 1998). If the district court determines that defense counsel has an actual or potential conflict, the court has a "disqualification/waiver obligation" to determine whether the conflict is so severe as to obligate the court to disqualify the attorney or a lesser conflict that can be waived in a Curcio hearing. Kliti, 156 F.3d at 153 (citing Levy, 25 F.3d at 153). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests

---

[4]  By letter dated August 14, 2024, Mr. Corozzo indicated that the defendant had retained Yehudi Moszkowicz as a "consultant on Mr. Gogic's case." See ECF Docket Entry No. 60.

of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

If the inquiry reveals that an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461 (2d Cir. 1995). If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., United States v. Malpiedi, 62 F.3d 465, 470 (2d Cir. 1995); Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

The court also has the discretion to disqualify an attorney even where it is not mandated under the law. Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02-CR-1237 (SWK), 2004 WL 613073, at *5 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

1. Defense Attorney's Involvement in Criminal Conduct

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See Lussier, 71 F.3d at 461-62. Such per se conflicts of interest are not only unwaivable, they are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). As described more fully below, the Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where

counsel is implicated in the defendant's crimes. With regard to the second category of per se conflicts, the issue is whether the attorney is "implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that 'vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrong doing.'" United States v. Gambino, 838 F. Supp. 749, 754 (S.D.N.Y. 1993) (quoting United States v. Fulton, 5 F.3d 605, 611 (2d Cir. 1993)).

Allegations that defense counsel is entangled in the facts of the defendant's criminal conduct also may create an unwaivable conflict of interest. See Williams, 372 F.3d at 105. "If the allegations are true, an attorney cannot freely advise the client whether to cooperate, or whether to take the stand at trial, for fear that the client could reveal information implicating the attorney." United States v. Pizzonia, 415 F. Supp. 2d 168, 182 (E.D.N.Y. 2006) (citing Fulton, 5 F.3d at 610); see also United States v. Gotti, 9 F. Supp. 2d 320, 324 (S.D.N.Y. 1998) ("[T]he attorney's desire to minimize his own involvement in the events in question or to characterize his own conduct favorably creates pressures potentially inimical to his client's interests.") (citing Locascio, 6 F.3d at 933, and United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989)). "If the allegations are false, the attorney cannot examine the government witness regarding the allegations against the attorney without in effect becoming an unsworn witness." Pizzonia, 415 F. Supp. 2d at 182.

Relatedly, courts have long recognized that a defense attorney who is under investigation by the government has a conflict of interest. See Armienti v. United States, 234 F.3d 820, 824 (2d Cir. 2000); United States v. Reyes-Vejerano, 276 F.3d 94, 99 (1st Cir. 2002). A lawyer in these circumstances, while dealing on behalf of his client with the office that is investigating him personally, "may, consciously or otherwise, seek the goodwill of the office for his own benefit," or advise his client to make decisions that are in the lawyer's own interest, and which may not be in the best interest of the lawyer's client. Armienti, 234 F.3d at 824. The conflict, however, may be waived so long as "the attorney's alleged criminal activity [is not] sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." Fulton, 5 F.3d at 611.

2. Attorneys as Witnesses

A lawyer is generally barred from acting as both an advocate and a witness in the same proceeding. Model Rules of Professional Conduct Rule 3.7(a); Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir. 1995); see also Hon. John Gleeson, Gordon Mehler & David C. James, Federal Criminal Practice: A Second Circuit Handbook § 8-6 (12th ed. 2012). "The risk that [a lawyer will] become a witness at trial [is] enough alone to . . . reach this determination [to disqualify] under an abuse of discretion standard," Jones, 381 F.3d at 121, provided that the testimony at issue is squarely relevant. United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985).

In Kliti, the Second Circuit vacated a conviction and ordered a new trial where it became apparent during the trial that the defense attorney could have been called as a fact witness to support his client's defense, but was not permitted to testify, and where the court did not obtain a Curcio waiver from the defendant. See Kliti, 156 F.3d at 155-57. Specifically, during the government's direct case, the government called an accomplice witness to provide

evidence of the defendant's participation in the charged counterfeit check scheme. See id. at 155. During cross-examination, the accomplice witness denied ever telling Kliti, Kliti's attorney Sarikas, and a third party that Kliti had "absolutely nothing to do with" the counterfeit check scheme. Id. at 155-56. Defense counsel explained to the court, out of the jury's presence, that the accomplice witness had, in fact, made that statement. See id. at 155. However, because Kliti chose not to testify at trial and because the third party invoked his Fifth Amendment privilege and refused to testify, Sarikas was the only other witness who could be called to refute the accomplice's version of events. See id. at 155-56. At that point, Sarikas was "in a clear conflict because he was faced with the choice of (1) testifying on behalf of his client, which would result in his disqualification, or (2) not presenting evidence of the exculpatory statement." Id. at 156 (footnote omitted). A Curcio hearing was neither requested nor undertaken, Sarikas did not testify, and the defendant was convicted.

The Second Circuit vacated the conviction. Under the above-described circumstances, the district court

> was obligated to question Kliti, in accordance with Curcio, to determine whether he was willing to waive his right to a conflict-free lawyer and to forgo confronting [the accomplice witness] with the exculpatory statement through the testimony of Sarikas. The [district] court should have explained to Kliti that Sarikas could not be a witness — sworn or unsworn — while Sarikas was representing Kliti, but that if Kliti were represented by another attorney, that attorney would be able to call Sarikas as a witness and have him testify about the statement.

Id. at 156-57.

"Courts have also considered disqualification where the chosen counsel is implicated in the allegations against the accused and could become an unsworn witness for the accused." Locascio, 6 F.3d at 931 (citing United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989)). "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." Locascio, 6 F.3d at 933. Irrespective of whether the attorney is actually called as a witness, "he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question . . . . Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." Id. (collecting cases).

For example, in Locasio, the appeal of John Gotti's conviction, Gotti's first choice of counsel, Cutler, had been present during discussions surreptitiously recorded by the government. As the Second Circuit wrote, affirming the district court's disqualification, "[t]he clearest support for [the district court's] finding was Cutler's presence during . . . discussions taped by the government. The government was legitimately concerned that, when Cutler argued before the jury for a particular interpretation of the tapes, his interpretation would be given added credibility due to his presence in the room when the statements were made." Id. at 934. The court wrote that an attorney could frame his own views as legal argument, which "would have

given Gotti an unfair advantage, since Cutler would not have had to take an oath in presenting his interpretation." Id.

The Second Circuit has noted that agreeing "to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances," Kliti, 156 F.3d at 156 n.7 (reversing conviction for failure to hold Curcio hearing to determine if defendant consented to limiting cross-examination), or that a stipulation may be used to avoid disqualification of an advocate-witness. Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009) (conflict negated by stipulation that obviated need for defense counsel's testimony).

However, where defense counsel is entangled in the facts of the defendant's case such that he should either be available as a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused," it is counsel's ethical duty to withdraw, and upon failing to do so, counsel should be disqualified, regardless of the defendant's expressed willingness to waive. Locascio, 6 F.3d at 931-34. "When an attorney is an unsworn witness . . . the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." Id. at 934. Thus, "[w]aiver by the defendant is ineffective in curing the impropriety in such situations, since he is not the party prejudiced." Id. at 934.

Finally, in cases where, as here, multiple conflicts have been raised, "each cannot be considered in isolation, but rather must be considered together when assessing whether there is a congruence of interests between the lawyer and his client." United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); see also Levy, 25 F.3d at 157.

## II. Analysis

The Court should exercise its discretion under Wheat and disqualify the law office of Rubinstein & Corozzo LLP from representing the defendant because there is a substantial risk that the Rubinstein & Corozzo Attorneys will be called to testify at a Fatico hearing, trial or other proceeding in a future case brought against the defendant or his co-conspirators, and because Mr. Corozzo has an actual conflict of interest.

First, the Rubinstein & Corozzo Attorneys are witnesses to a juror bribery and obstruction scheme as to which the defendant and his co-conspirators are implicated and there is a substantial risk that they may be called to testify at a future proceeding, including at a Fatico hearing or trial in a future case brought against the defendant. The Rubinstein & Corozzo Attorneys are the only witnesses who can testify as to the disposition of the copies of the Juror List provided by court staff to the defendant and defense team. They are also direct witnesses to their receipt of sensitive discovery material under the Protective Order and the way in which it was provided and/or reviewed by the defendant at the MDC. Their potential testimony is direct evidence of the defendant's access to and potential use of these materials in violation of 18 U.S.C. §§ 1503 (obstruction of justice) and 1513 (witness retaliation). Should the defendant dispute the government's allegations regarding his efforts to contact witnesses and obstruct justice, as evidenced by his improper possession of sensitive discovery material identifying cooperating witnesses, there is a significant possibility that the Rubinstein & Corozzo Attorneys would be called as witnesses at an evidentiary hearing or future trial, which presents a

8

meaningful conflict of interest. Even if the government were to decline to call any of the Rubinstein & Corozzo Attorneys at a hearing or trial, which would prompt the firm's disqualification as counsel, see Kliti, 156 F.3d at 156 n.8 (citing cases), the defendant might wish to call the attorneys as witnesses on his own behalf.

   Second, as set forth in a supplemental submission filed ex parte, Mr. Corozzo, the lead attorney in this case, is a subject of the ongoing investigation by law enforcement into the attempt to bribe Juror-1, which itself may create an unwaivable conflict of interest. In United States v. Napoli, the Honorable John Gleeson disqualified the law office of Rubinstein & Corozzo LLP from representing the defendant at trial based on evidence from which a factfinder could reasonably infer that Mr. Corozzo was implicated in witness tampering as to which the defendant was charged. No. 10-CR-150 (JG), 2010 WL 1687669, at *2 (E.D.N.Y. Apr. 27, 2010). As the court in Napoli wrote:

> Defense counsel may, for example, refrain from preparing a zealous defense against the charges or from advising his client to accept a plea agreement with the government for fear that evidence of counsel's crimes may be discovered. In such situations, advice as well as advocacy is permeated by counsel's self-interest, and no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation.

Id. (internal quotation marks, citations and alterations omitted). Similarly, in United States v. Curanovic, the Honorable Brian M. Cogan disqualified Mr. Corozzo in light of evidence that a government witness implicated Mr. Corozzo in a loansharking operation related to the charges faced by the defendant and that Mr. Corozzo was a subject of a criminal investigation being conducted by the United States Attorney's Office. No. CR 08-240 (BMC), 2011 WL 1555075, at *3-4 (E.D.N.Y. Apr. 1, 2011). The court found that "Mr. Corozzo has a strong interest in self-protection that could readily manifest itself in a way that is directly contrary to [the defendant's interests]" and that this kind of "client-conflicting self-interest is perhaps the best indicator of an unwaivable conflict." Id. The court concluded that even if it were to find that "the per se rule does not apply and that this conflict is waivable," it would still exercise its discretion and deny the defendant's waiver in light of significant problems associated with Mr. Corozzo's continued representation and its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Id. (Wheat, 486 U.S. at 160).

   Here, as in Napoli and Curanovic, there is a significant risk that Mr. Corozzo and by extension, his firm, have a personal interest in defending against allegations that Mr. Corozzo participated in the scheme to bribe a juror selected in the defendant's criminal trial. Under these circumstances, it is unlikely that Rubinstein & Corozzo LLP would be in a position to represent the defendant without a self-interested concern in protecting Mr. Corozzo and defending the propriety of Mr. Corozzo's conduct, potentially at the defendant's expense. To the government's knowledge, the only individuals with access to the Juror List were court staff, the Assistant United States Attorneys handling the defendant's prosecution, the defendant, and the Rubinstein & Corozzo Attorneys. Mr. Corozzo cannot render effective representation where, as here,

pursuing certain defense strategies could be detrimental to Mr. Corozzo personally. As just one example, although it may be in the defendant's interest to dispute that he ever improperly kept or transmitted a copy of the Juror List, Mr. Corozzo may have a personal interest not to advance such a defense since it would implicate the Rubinstein & Corozzo Attorneys.

While many conflicts of interest by Mr. Corozzo's continued representation of the defendant are already apparent, it seems likely that additional conflicts of interest, currently unforeseen, will materialize as the case progresses. See Wheat, 486 U.S. at 162-63 ("The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.").

In view of the myriad conflicts that would arise if Rubinstein & Corozzo LLP were to continue to represent the defendant, the government respectfully submits that its interests in ensuring a fair trial, verdict and just sentence, as well as the interests of the Court in preserving the integrity of the judicial process, outweigh the defendant's interest in continuing to retain Rubinstein & Corozzo LLP as counsel in this case. The government notes that there are three other attorneys of record who can proceed to trial in this matter.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should exercise its discretion under Wheat and disqualify the Rubinstein & Corozzo Attorneys from representing the defendant.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:         /s/
Tanya Hajjar
Emily J. Dean
Assistant U.S. Attorneys
(718) 254-6109

cc:   Counsel of Record