

U.S. Department of Justice

United States Attorney
Eastern District of New York

EJD:TH
F. #2022R00883/NY-NYE-865

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 28, 2026

By ECF

The Honorable Joan M. Azrack
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Goran Gogic
                 Criminal Docket No. 22-493 (JMA)

Dear Judge Azrack:

      The government respectfully submits this reply in further support of the government's request that the Court exercise its discretion under Wheat v. United States, 486 U.S. 153 (1988) to disqualify the law office of Rubinstein & Corozzo LLP from representing the defendant Goran Gogic in the above-captioned matter. As set forth in the government's initial filing, the attorneys Joseph Corozzo, Jr., Esq., Angela Lipsman, Esq., and Ian Healy, Esq. ("the Rubinstein & Corozzo Attorneys") and the defendant have several overlapping conflicts of interest. The government respectfully submits that the Court's independent interest in ensuring a fair and just trial in this matter and in preserving the integrity of the judicial process outweighs the defendant's interest in continuing to retain the Rubinstein & Corozzo Attorneys in this case.

      As the Court and counsel are aware, the government is required to advise the Court of facts relevant to ensuring the defendant's right to conflict-free counsel. See United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994) (commending the government for alerting the district court to conflict issues but criticizing the government for failing to reraise those issues after the case was reassigned and allowing the "Judge to walk unwitting into the 'mine field.'"). This is because the district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Id. (citing Strouse v. Leonardo, 928 F.2d 548, 555 (2d Cir. 1991); United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987). The Court has an "independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." Wheat, 486 U.S. at 161.

I.  Conflicts Related to Defendant's Possession of Sensitive Discovery Material Identifying CW-1, CW-2 and CW-3

As detailed in the government's motion, there is substantial evidence of the defendant's involvement in a scheme to contact and intimidate witnesses in this case, which, in the government's view, constitutes the basis for an obstruction enhancement under the United States Sentencing Guidelines should there be a conviction in this case and may bear on issues raised at trial. The government anticipates that the nature and scope of the defendant's relationship with the cooperating witnesses in this case, including CW-1, CW-2 and C-3, is likely to be disputed at trial.

Defense counsel's opposition to the government's motion, ECF Docket Entry No. 196, appears to misapprehend the purpose of the motion and its contents only underscores the likelihood that continued representation of the defendant by the Rubinstein & Corozzo Attorneys will significantly implicate the defendant's right to conflict-free counsel. Defense counsel claims that the government "seeks the removal of counsel based upon an alleged violation" of the protective order entered in this case and its "intimating that this firm retroactively conspired to intimidate witnesses." Def. Opp. at 3. Not so. The government seeks disqualification because, among other things, the Rubinstein & Corozzo Attorneys are percipient witnesses to a juror bribery and witness obstruction scheme, a fact only emphasized by the representations made in counsel's opposition. The opposition to the government's motion contains the following statements relevant to the Court's mandated inquiry under Wheat:

- Associates of Rubinstein & Corozzo LLP regularly visited the defendant to review discovery with him, including documents translated into the defendant's native language. Opp. at 8.

- Sensitive discovery materials were never "intentionally" given to the defendant, but they were not kept in sight of an attorney at all times and may have "inadvertently" been "mixed in with whatever papers that Mr. Gogic was allowed to have[.]" Opp. at 9.

- The translated proffer material recovered from the defendant's cell contained the defendant's handwriting, including statements relevant to disputed facts at trial, including the phrases, "[CW-2] lied that I worked with [CW-1] on a shipment to Turkey, to the port of Mersin" and "How did I tell him [i.e., CW-2] that I worked with [nickname for CW-3] and that I have a problem in the U.S.A., he's lying." Opp. at 9 and Exhibit B.[1]

These statements only underscore the likelihood that the Rubinstein & Corozzo Attorneys may be called as witnesses at an evidentiary hearing, including a Fatico hearing, or future criminal proceeding against the defendant and may significantly complicate their representation of the defendant at trial. For example, at trial or at an evidentiary hearing, the government may seek to

---

[1] The government expects that, at trial, CW-3 will testify that the nickname in the handwritten notes on the proffer material was one used by the defendant for him.

admit the defendant's handwritten statements on CW-2's proffer material, which are statements of a party-opponent reflecting his familiarity with CW-1, CW-2, and CW-3. The defendant may seek to blame his attorneys for his possession of sensitive discovery material in a jail facility or claim that the handwriting on the proffer material was not his. Such arguments, however, contradict factual representations made by the Rubinstein & Corozzo Attorneys and are at odds with the interests of the Rubinstein & Corozzo Attorneys in defending their own behavior and the propriety of their conduct in this case.

Defense counsel, in its opposition, states that CW-1 is a "public figure, known to be a cooperator" and that the defendant "was clearly familiar with CW-1 long before coming into possession of the photograph in Exhibit A." Opp. at 12. Counsel also emphasizes the length of time between when the defendant called CW-2 on a contraband phone and asked CW-2 to visit him and when documents tending to identify CW-2 as a cooperating witness were recovered from the defendant's cell. Opp. at 10. But these arguments in no way undermine the thrust of the government's motion, which is that the defendant's possession of prohibited materials tending to identify government witnesses is part of a longstanding and coordinated effort to intimidate those witnesses and obstruct justice in this case, and that the Rubinstein & Corozzo Attorneys are witnesses to how that prohibited material was provided to the defendant at the Metropolitan Detention Center.[2] CW-1 was repeatedly contacted, directly and indirectly, and in the immediate lead-up to trial, about the fact that he was suspected to be a witness in this case. The defendant possessed a redacted photograph of CW-1's daughter in his cell, and one week before trial was set to begin, an individual approached the daughter's residence in Colombia and inquired about CW-1. Lastly, as to CW-3, defense counsel appends an email purportedly written by the reporter of the Amsterdam-based newspaper article that identified CW-3 by name. In the email, the reporter claims that in 2022, he "heard from sources that there would be a Dutch key witness" in this case that "was cooperating with the DEA" and that on November 10, he contacted Rubinstein & Corozzo LLP and on November 11, he contacted a "spokesperson for the DOJ in New York." Opp. at 10-11, Exhibit C.[3] Notwithstanding the fact that the reporter claims to have learned that CW-3 may have been "cooperating with the DEA" in 2022, the reporter did not seek to publish an article identifying CW-3 until November 15, 2025, three years later, and only after apparently speaking to Rubinstein & Corozzo LLP. Tellingly, neither defense counsel nor the reporter indicates what was discussed in the November 11 communication, nor where the reporter obtained the photograph used in the article.

II. Conflicts Related to Juror Bribery Scheme

In addition, the Rubinstein & Corozzo Attorneys are witnesses—and Mr. Corozzo a subject—of the government's ongoing investigation into the attempt to bribe a juror ("Juror-1"), who was selected in the defendant's criminal trial. As reflected in filings in United States v.

---

[2] The government notes that seven contraband cellular devices were seized by Bureau of Prisons staff from the defendant's unit.

[3] The government is not aware of any contact with a "spokesperson for the DOJ in New York" by this reporter. No communication occurred between the United States Attorney's Office for the Eastern District of New York and the reporter until after the article was published.

3

Krasniqi et al., 25-CR-385 (JMA), the evidence reflects that the three individuals who were arrested for attempting to bribe Juror-1 four days before trial did so at the direction of other uncharged co-conspirators. As one example, in a conversation on November 13, 2025, one defendant explained that he and "his friends" would pay Juror-1 between $50,000 and $100,000 for Juror-1's not guilty vote at trial. On November 16, 2025, in a recorded conversation by phone between two other defendants, one defendant confirmed that other individuals were involved in directing the juror bribery scheme:

> Defendant-1: Is [Juror-1] coming? What did he say?
>
> Defendant-2: I'll tell you when he will come. Okay—he is scared, he said he's willing to do it, but how did they find his name?
>
> Defendant-1: He's willing to do it.
>
> Defendant-2: But how, how did they find, how did they find his name?
>
> Defendant-1: People there at jury duty.

The number of individuals with access to the list of jurors' first and last names, however, was very limited, to include court staff, Assistant United States Attorneys handling the defendant's prosecution, the defendant, and the Rubinstein & Corozzo Attorneys. The government's investigation of the juror bribery scheme is active and continuing, and the Rubinstein & Corozzo Attorneys are the sole witnesses who can testify as to the disposition of the copies of the list of jurors provided by court staff to the defendant and defense team. Any information provided on the subject would either tend to inculpate the defendant (e.g., that the names of potential or selected jurors were not provided to anyone other than their client) or the Rubinstein & Corozzo Attorneys (e.g., the juror list was in the sole possession of the Rubinstein & Corozzo Attorneys and never provided to their client). The Rubinstein & Corozzo Attorneys may also be witnesses to communications with the defendant related to the juror list or to the bribery scheme no longer covered by an attorney-client privilege.[4] The government respectfully submits that the fact that the Rubinstein & Corozzo Attorneys are critical witnesses related to the scheme to bribe Juror-1, and Mr. Corozzo a subject of the government's investigation, raises a significant conflict of interest sufficient for the court to exercise its discretion under Wheat and disqualify the

---

[4] The attorney-client privilege is limited by, inter alia, the "crime-fraud exception," which "strips the privilege from attorney-client communications that relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re John Doe, Inc., 13 F.3d 633, 636 (2d Cir. 1994) (internal citation omitted). The crime-fraud exception applies even if the attorney had no knowledge of, and did not intend to facilitate or conceal, the crime or fraud. See, e.g., In re Grand Jury, 705 F.3d 133, 157 (3d Cir. 2012) ("For the crime-fraud exception to apply, the attorney does not have to be implicated in the crime or fraud or even have knowledge of the alleged criminal or fraudulent scheme.") (internal citations omitted); United States v. Sabbeth, 34 F. Supp. 2d 144, 150 (E.D.N.Y. 1999) ("[T]he fact that the attorney may have been oblivious to the significance of the communication made by the client is not controlling.").

Rubinstein & Corozzo Attorneys from representing the defendant even without reference to the material set forth in the government's ex parte submission.

Counsel argues that any such conflict is speculative and the "proper time" to bring such a motion "would be if and when a Fatico hearing" on the attempts to obstruct witnesses or if or when additional charges related to jury bribery are brought in a separate prosecution. Opp. at 4, 18. But the Supreme Court in Wheat and the Second Circuit has allowed for "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." United States v. Cain, 671 F.3d 271, 294 (2d Cir. 2012).

In United States v. Cain, for example, the Second Circuit found that the district court had not abused its discretion in disqualifying an attorney after the government indicated that it intended to call the defendant's attorney "as a grand jury witness in connection with potential witness tampering charges" against the defendant, since the attorney had provided perjured affidavits to state law enforcement, and the government "sought his testimony to establish that the affidavits had been in [the defendant's] possession and that the defendant had "intended that they be filed in an official proceeding, an element of the offense." Id. at 292-93. Even though the district court "acknowledged that the witness tampering charges might ultimately be brought as part of a separate indictment," it concluded that the attorney's "ability to represent his client effectively would be compromised if he were simultaneously serving as a witness against him, even in a separate proceeding." Id.

Similarly, in United States v. Jones, the Second Circuit held that the district court did not abuse its discretion in disqualifying the defendant's attorney based on the government's representation that the defendant's attorney and others at his law firm "were likely to become the subjects of a grand jury investigation based on the possibility that they were passing information" between the defendant and a co-conspirator from whose apartment law enforcement had recovered sensitive discovery materials provided to the defendant by the government. United States v. Jones, 381 F.3d 114, 117-20 (2d Cir. 2004). Although the defendant argued that any conflict could have been resolved by stipulation, the Second Circuit concluded that a stipulation was unlikely since it would have required the defendant to admit guilt. Id. at 128. The Second Circuit reasoned that the "risk" that the attorney would be a witness was sufficient to "allow the district court to reach this determination under an abuse of discretion standard," particularly when it seemed "more likely than not that a number of conflicts will materialize." Id. at 121.

Other courts in this District evaluating similar conflicts have come to similar conclusions. In United States v. Elder, Honorable William F. Kuntz II disqualified the defendant's attorney after the government represented that the attorney was "under investigation for his alleged role in helping the defendant avoid arrest[.]" 311 F. Supp. 3d 589, 595 (E.D.N.Y. 2018). As the district court explained, even putting aside the merits of the government's allegations, the attorney faced an unwaivable conflict arising out of "counsel's powerful self-interest in avoiding criminal charges or reputational damage." Id. at 596-97 (quoting United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)). Here, too, Mr. Corozzo and his firm have a

5

personal interest in defending against allegations that Mr. Corozzo participated in the scheme to bribe Juror-1.

Even if the defendant were willing to waive the conflicts posed by his representation by Rubinstein & Corozzo LLP, the government respectfully submits that the Court should decline to accept such waivers and should not defer exercising its discretion under Wheat. Wheat, 486 U.S. at 162 (observing that courts must "pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly"). In rejecting one such proposed waiver of a conflict of interest raised by a joint representation, the Honorable Eric N. Vitaliano noted that even though the conflict was, in theory, waivable, disqualification was appropriate due to the nature of the conflict when "the road from here through trial, and beyond" was "fraught with peril." United States v. Vertuccio, No. 15-CR-174 (ENV), 2017 WL 6513676, at *4 (E.D.N.Y. Dec. 19, 2017).

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should exercise its discretion under Wheat and disqualify the Rubinstein & Corozzo Attorneys from representing the defendant.

    Respectfully submitted,

    JOSEPH NOCELLA, JR.
    United States Attorney

By:   /s/ Tanya Hajjar
    Tanya Hajjar
    Assistant U.S. Attorney
    (718) 254-6109

cc:    Counsel of Record